1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CHARLES MOUNCE,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>USAA GENERAL INDEMNITY COMPANY,<br><br>　　　　　Defendant. | CASE NO. 2:22-cv-1720<br><br>ORDER DENYING PLAINTIFF'S PENDING MOTIONS |

## 1. INTRODUCTION

This case involves an insurance dispute between Plaintiff Charles Mounce and Defendant USAA General Indemnity Company about subrogated funds and claims handling. Mounce filed a second motion for partial summary judgment and seeks leave to file a third. Dkt. Nos. 86, 96. The Court has considered the papers submitted in support of and opposition to the motions, as well as oral argument by the parties. For the reasons stated below, the Court DENIES Mounce's motions.

## 2. BACKGROUND

On October 3, 2017, Mounce was injured in a motor vehicle accident while riding as a passenger in a car driven by Dale Ann Pyles. Dkt. No. 25 at 2. Another

driver, Ryan Fox, caused the accident. Dkt. No. 26-1 at 46. Pyles held an USAA

insurance policy that included personal injury protection (PIP) benefits up to

$10,000 and Underinsured Motorist (UIM) benefits up to $50,000 per person. Dkt.

No. 28 ¶ 2. Pyles's USAA policy states:

> If we make a payment under this policy and the person to or for whom payment was made has a right to recover damages from another, we will be subrogated to that right. The person to or for whom payment was made shall do whatever is necessary to enable us to exercise our rights, and shall do nothing after loss to prejuidce them.

Dkt. No. 28-1 at 38.

On October 9, 2017, USAA informed Mounce he was covered under Pyles's

PIP policy and explained its subrogation interest in damages received from Fox or

his insurer, State Farm. Dkt. Nos. 25 at 2; 26-1 at 48. USAA's letter to Mounce

stated,

> If you retain an attorney to assist you, we will pay a pro-rata share of the attorney's fees if the attorney successfully obtains the entire amount of our PIP payments for us. If the attorney does not obtain the entire amount of our PIP payments for us, we will not approve any settlement with the at-fault party, and we will request that you do not sign any release that does not specifically protect our recovery rights.

Dkt. No. 26-1 at 49.

Between November 2017 and October 2018, USAA paid Mounce's medical

providers a total of $9,910.45 for his various treatments. Dkt. Nos. 28 ¶ 3; 28-2 at 2–

5.

On July 30, 2020, USAA contacted State Farm for a status update on

Mounce's liability claim. Dkt. Nos. 29 ¶ 9; 29-3 at 3. State Farm stated the liability

claim was closed due to a lack of response by Pyles and Mounce. *Id.* With the

statute of limitations approaching in October, USAA filed for inter-company arbitration against State Farm. Dkt. No. 29 ¶ 10. USAA never completed the inter-company arbitration, however, because State Farm issued USAA a payment for the subrogated amount of $9,910.45 in early September 2020. *Id.* ¶¶ 11–12.

Mounce filed a complaint against Fox in September 2020. Dkt. No. 26-1 at 64. Mounce did not inform USAA of his suit against Fox. Dkt. No. 90 ¶ 2 ("[Mounce] did not disclose to USAA the date he filed the underlying suit until after the pending litigation had commenced. [Mounce] disclosed the date he filed the underlying lawsuit on or about July 13, 2023."). Before the trial, Mounce waived his claim to payment of past medical expenses and stated that he would only pursue damages related to future medical care, replacement services, and noneconomic damages. Dkt. No. 28-14 at 16–17. Mounce did not inform USAA that he waived past medical expenses. Dkt. No. 90 ¶ 3. The jury rendered a verdict for Mounce in the amount of $20,000. Dkt. No. 33 at 29. In addition, it awarded Mounce's spouse $5,000 for loss of consortium. *Id.*

In a June 2, 2022, stipulation State Farm agreed to pay Mounce an additional $5,089.55 in exchange for Mounce forgoing an appeal and agreed to "waive" the $9,910.45 PIP payment. Dkt. No. 33 at 29–30.

Mounce now argues that USAA must pay a pro rata share of the attorneys' fees and costs that his counsel expended in obtaining the jury verdict against Fox. Dkt. No. 86 at 5. Specifically, counsel states it accrued $21,160.47 in costs and

$13,510.06 in fees and Mounce seeks a summary judgment order stating that, as a matter of law, USAA owes a pro rata share of $9,910.45.[1] *Id.*

## 3. DISCUSSION

### 3.1 Legal standard.

"[S]ummary judgment is appropriate when there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Frlekin v. Apple, Inc.*, 979 F.3d 639, 643 (9th Cir. 2020) (citation omitted). A dispute is "genuine" if "a reasonable jury could return a verdict for the nonmoving party," and a fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When considering a summary judgment motion, courts must view the evidence "in the light most favorable to the non-moving party." *Barnes v. Chase Home Fin., LLC*, 934 F.3d 901, 906 (9th Cir. 2019) (internal citation omitted).

### 3.2 Questions remain as to whether Mounce's recovery from State Farm qualifies as a common fund.

Washington recognizes an exception to the general rule that parties do not share attorneys' fees in cases involving a common fund. *Matsyuk v. State Farm Fire & Cas. Co.*, 272 P.3d 802, 804 (Wash. 2012). Under the common fund exception, also known as the "*Mahler* rule," "a personal injury protection (PIP) insurer [must] share

---

[1] It's unclear from Mounce's briefing how he arrived at this figure. It is the same amount as the amount of PIP funds used by Mounce and collected by USAA from State Farm. At oral argument, the Court asked Mounce's counsel to explain its formula for calculating the sum Mounce requested. Counsel did not provide a proposed method for calculating the pro rata share. USAA proposes $9,384.74 and Mounce does not object to this calculation. Dkt. No. 88 at 10.

pro rata in the attorney fees incurred by an injured person when the recovery benefits the PIP insurer." *Id.* at 804–05. "The equitable sharing rule derives from principles of equity, not contract language." *Id.* at 807. "In general, the insurer has no right of reimbursement until the insured is fully compensated for a loss. But, the insured and the tortfeasor may not knowingly prejudice the insurer's right to reimbursement." *DeTurk v. State Farm Mut. Auto. Ins. Co.*, 967 P.2d 994, 996 (Wash. Ct. App. 1998) (citing *Mahler v. Szucs*, 957 P.2d 632, 643 (Wash. 1998)).

To establish his entitlement to a pro rata share of attorneys' fees Mounce must show that: (1) he created a common fund through his litigation efforts; (2) USAA benefited from this fund; and (3) "equity requires that the cost of procuring the common fund be shared by those who benefit from it." 35 WA. PRAC., WASHINGTON INSURANCE LAW AND LITIGATION § 30:10 (2024-2025 ed.) (citing *Hamm v. State Farm Mut. Auto. Ins. Co.*, 88 P.3d 392 (Wash. 2004)); *see also Matsyuk*, 272 P.3d at 805–806. This rule applies even though insurers can also recover PIP funds from third parties via interinsurer arbitration. *See DeTurk*, 967 P.2d at 995 (rejecting an insurer's argument that it should not have to pay pro rata fees because the funds the insured recovered "were recoverable in interinsurer arbitration") (internal quotation marks omitted).

Mounce's motion fails because there are genuine disputes of material fact regarding whether USAA benefited from his recovery from Fox. Unlike typical cases, the facts here present unusual circumstances that distinguish this case from the precedents Mounce relies upon. First, USAA had already recovered its PIP payments directly from State Farm through its own negotiations before Mounce

1    obtained his verdict. Second, Mounce explicitly waived recovery of past medical

2    expenses at trial, which covered the PIP funds paid by USAA. As USAA argues,

3    these facts raise substantial questions about whether USAA benefited from

4    Mounce's litigation efforts against Fox.

5        USAA contends it did not benefit from Mounce's recovery because: (1)

6    Mounce's verdict did not include any amount for past medical expenses, as he

7    explicitly waived that category of damages (Dkt. No. 28-14 at 16-17); (2) USAA had

8    already obtained its PIP reimbursement directly from State Farm before Mounce's

9    verdict (Dkt. No. 29 ¶¶ 11–12); and (3) the post-verdict settlement provision stating

10   that State Farm "waived" the previous PIP payment (Dkt. No. 33 at 29–30) did not

11   create any actual benefit to USAA. Dkt. No. 88 at 13-14.

12       Mounce argues that the settlement with State Farm created a fund from

13   which USAA benefited, regardless of how the underlying parties allocated the

14   damages. Dkt. No. 92 at 3–4. Mounce relies on *Leader Nat. Ins. Co. v. Torres*, 779

15   P.2d 722, 725 (Wash. 1989), which held that an insured "cannot contract out of its

16   obligation to reimburse its insurance company." But the procedural posture in

17   *Leader* differs significantly from this case. In *Leader*, the insured was attempting to

18   avoid reimbursing the insurer after receiving settlement funds, whereas here,

19   USAA had already obtained reimbursement before Mounce's verdict and

20   settlement.

21       The unique sequence of events here—specifically, that USAA obtained its

22   reimbursement before Mounce's verdict, and Mounce's express waiver of past

23   medical expenses—distinguishes it from the common fund cases Mounce relies on.

ORDER DENYING PLAINTIFF'S PENDING MOTIONS - 6

1    These factual disputes about whether USAA benefited from Mounce's litigation

2    efforts preclude summary judgment on his *Mahler* fee claim.

3    **3.3    The Court denies USAA's request for sua sponte summary judgment.**

4         USAA argues that the Court should not only deny Mounce's motion but also

5    enter summary judgment in USAA's favor, without requiring a formal cross-motion,

6    because "Mounce prejudiced [USAA's] right to recover PIP fees in violation of their

7    contract provision." Dkt. No. 88 at 10. USAA contends that "[w]here an insured's

8    failure to comply with express coverage terms results in actual prejudice to the

9    insurer, the noncompliance extinguishes the insurer's liability under the policy." *Id.*

10   at 13 (citing *P.U.D. of Klickitat Cty v. Int'l Ins. Co.*, 881 P.2d 1020 (Wash. 1994)).

11        The Court declines to grant sua sponte summary judgment to USAA for two

12   reasons. First, whether Mounce's decision to waive medical specials at trial

13   breached the policy's cooperation clause presents a disputed question of fact. The

14   policy requires that the insured "shall do nothing after loss to prejudice [USAA's

15   rights]," but Mounce maintains that his litigation strategy did not prejudice USAA

16   because USAA had already recovered its PIP payments directly from State Farm.

17   Dkt. No. 92 at 5–6.

18        Second, even if Mounce's decision to waive medical specials could constitute a

19   breach, whether that breach prejudiced USAA remains disputed. USAA recovered

20   the full amount of its PIP payments ($9,910.45) from State Farm before Mounce's

21   trial against Fox even began. Dkt. No. 29 ¶¶ 11–12. The record does not establish

22

23

that USAA suffered actual prejudice when it had already received complete reimbursement.

Given these disputed issues of material fact, sua sponte summary judgment is inappropriate. *See Gospel Missions of Am. v. City of Los Angeles*, 328 F.3d 548, 553 (9th Cir. 2003) (sua sponte summary judgment is appropriate only where "the losing party has had a 'full and fair opportunity to ventilate the issues involved in the matter.'") (quoting *Cool Fuel, Inc. v. Connett*, 685 F.2d 309, 312 (9th Cir.1982)).

### 3.4    Mounce's request for *Olympic Steamship* fees is premature.

Mounce also requests attorney fees under *Olympic S.S. Co. v. Centennial Ins. Co.*, 811 P.2d 673 (Wash. 1991), which allows an insured to recover attorneys' fees when "compelled to assume the burden of legal action to obtain the benefit of its insurance contract." *Id.* at 681; *see* Dkt. No. 86 at 10–12. Because the Court is denying Mounce's motion based on disputed issues of material fact regarding the common fund doctrine, the Court need not reach the *Olympic Steamship* issue right now. If Mounce ultimately prevails on his claim that USAA owes him a pro rata share under the Mahler doctrine, the *Olympic Steamship* issue may become relevant at that point. *See Woodley v. Safeco Ins. Co.*, 82 P.3d 660, 774 (Wash. 2004) (considering *Olympic Steamship* fees after determining that the insured was entitled to a pro rata share of legal expenses under *Mahler*).

1

2

### 3.5    The Court denies Mounce's request for leave to file a third summary judgment motion.

In a separately filed motion, Mounce seeks permission to file a third summary judgment motion on the narrow issue of dismissing certain of Defendant's affirmative defenses. Dkt. No. 96. Mounce contends that discovery has revealed "undisputed facts which make Summary Judgement appropriate" and that "[t]here is no question of material fact on these matters, and they must be decided as a matter of law." *Id.* at 5. He asserts this motion would "conserve judicial resources and streamline the upcoming trial." *Id.*

The Court could not disagree more. This would constitute Mounce's *third* attempt at partial summary judgment, following motions filed in July 2023, Dkt. No. 25, and September 2024, Dkt. No. 84. While courts have discretion to permit successive summary judgment motions, *see Hoffman v. Tonnemacher*, 593 F.3d 908, 911 (9th Cir. 2010), Mounce has remarkably failed to articulate any compelling justification for yet another bite at the apple. Despite two prior opportunities, he now seeks to carve out additional issues for piecemeal adjudication after the dispositive motions deadline has passed and with trial scheduled for June 2025. Dkt. Nos. 85, 91.

The Court notes with concern that Mounce's successive motions have consumed precious judicial resources and delayed proceedings without demonstrable benefit. Mounce has identified no change in controlling law, no newly discovered evidence of significance, and no manifest injustice requiring correction.

*See Kische USA LLC v. Simsek*, 2017 WL 5881322, at *3 (W.D. Wash. Nov. 29, 2017). The motion is thus DENIED.

## 4. CONCLUSION

Accordingly, the Court DENIES Mounce's motion for partial summary judgment, Dkt. No. 86, and his motion for leave to file a third partial summary judgment motion, Dkt. No. 96.

Dated this 9th day of April, 2025

Jamal N. Whitehead
United States District Judge